UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-80080-ALTMAN

UNITED STATES OF AMERICA
    Plaintiff

vs.

DONALD NEHEMIAH WATSON,
    Defendant.
_____/

## FACTUAL PROFFER

The United States of America and **DONALD NEHEMIAH WATSON**, ("WATSON" or the "Defendant") agree that had this case gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

On May 6, 2019, at approximately 2:00 a.m., members of the Palm Beach Sheriffs Marine Enforcement Unit (hereinafter MEU) spotted a target of interest (hereinafter TOI) on their radar system. Onboard the MEU vessel were officers with the Palm Beach Sherriff's Office as well as United States Border Patrol (USBP) Agent Miguel Esteves. After seeing the TOI on the radar, they navigated towards its location. As they neared the TOI's location they noticed a blinking white light to the west of the MEU. The MEU then identified the TOI when they came within approximately 100 yards of it (approximate location N26 43.00 W-80 01.00) and confirmed that it had no navigation lights turned on. This location is approximately 1 mile east of The Breakers Hotel in Palm Beach, FL. At that point the MEU activated their emergency equipment (blue lights and siren) directing the TOI to stop. The TOI then increased its speed and drove in an evasive manner. The MEU pursued the TOI and requested further assistance from the Palm Beach Sheriff's Office and the United States Coast Guard (USCG). Officers were able to observe that the TOI was displaying a vessel registration number of NP013085 and markings indicating that

1

the TOI was a 21-foot "Wahoo". Officers also observed that onboard there were two black males. The driver of the boat was observed wearing all black clothing; the second male was wearing jeans and a black shirt.

MEU continued to pursue the TOI. The TOI continued to evade the MEU and was traveling east (offshore). PBSO Air Support (AS) was able to join the pursuit and confirmed that the TOI was occupied by two males. Approximately 5 minutes later, USCG arrived on scene and took over as the primary pursuit vessel and activated its lights and siren, in an effort to get the TOI to stop. The pursuit continued for another five minutes until the TOI stopped at approximately 0247 hours (approximate location N 26 42.048, W -79 47.632). The USCG was able to then take custody of the two individuals on the TOI. Once in custody, USBP Agent Esteves interviewed them and determined that they were both Bahamian nationals. The individual who was observed driving the boat self-identified as WATSON. WATSON also provided Agent Esteves a Bahamian identification document bearing the same name. The passenger identified himself as W.N.L. with a date of birth of October XX, XXXX. During the interview, Agent Esteves was told by the individuals that they had left Freeport Bahamas and were doing a test run on the vessel and when they noticed they were running out of fuel they decided to head to West Palm Beach to re-fuel before heading back to the Bahamas.

Agent Esteves observed a black bag on the deck of the TOI and asked WATSON and W.N.L. to whom it belonged. Both men stated that the bag was already on the boat when they boarded it and that it did not belong to either of them. As the bag was taken from the TOI to the patrol vessel, a Bahamian passport fell out of it. Upon inspection, Agent Esteves noticed that the passport had a photo matching W.N.L. but it listed his name as Travis Jamaal MOSS and date of birth of January XX, XXXX. Post arrest processing performed by USBP agents revealed that the

passenger who initially identified himself as W.N.L. was actually Travis Jamaal MOSS and that he had been previously deported in 2014.

The TOI was towed by PBSO to the USCG station located at 3300 Lakeshore Drive, Riviera Beach, FL 33404. Once at the USCG station, the TOI was searched, and an additional identification document was found bearing MOSS' photo and name as well as a black Alcatel smart phone.

At approximately 1436 hours, WATSON was interviewed at the USBP station after he was read his ICE statement of rights form in English, which he signed. WATSON explained that he was tasked to bring TOI to Freeport and that it was going to be used to transport MOSS to the United States. WATSON explained that he was hired to do this by a man he knows as "Rasta". He explained that the TOI was going to be driven by an unknown person but when that person backed out, "Rasta" asked WATSON to drive the boat with MOSS to the United States. WATSON stated that he was not sure how much he was going to receive for this trip, but he thought it was in the range of approximately $8,000 USD. WATSON explained that they left Freeport at approximately 1600 hours on May 5, 2019 and that MOSS entered a waypoint in the GPS and set it as their destination. When the TOI was previously searched, agents took a photograph of the GPS screen that showed the GPS waypoint. WATSON confirmed the photo and he confirmed that was the destination that MOSS had inputted into the GPS. The waypoint is located just off the coast of West Palm Beach, FL.

WATSON explained that when the patrol vessel initially encountered and turned on their emergency lights and siren, his reaction was to flee. He explained that he understood he was involved in illegal activity and evaded arrest by driving the boat east for approximately 20 minutes. WATSON also admitted knowingly attempting to bring MOSS unlawfully into the United States.

As to Count 1, the government would have thus proven the following elements beyond a reasonable doubt:

1. The defendant brought, attempted to bring a person into the United States;
2. The person was an alien;
3. The defendant knew the person was an alien who had not received prior official authorization to come, to enter, or to reside in the United States; and,
4. The defendant brought the person into the United States for the purpose of commercial advantage or private financial gain.

As to Count 2, the government would have thus proven the following elements beyond a reasonable doubt:

1. The defendant was the master, operator, or person in charge of a vessel of the United States or subject to the jurisdiction of the United States;
2. That authorized Federal Law Enforcement Officers ordered the defendant to 'heave to' his vessel; and
3. That the defendant knowingly failed to obey that order.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 7/2/19    By: _____
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: July 2, 2019    By: _____
DARYL WILCOX
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: July 2, 2019    By: _____
DONALD NEHEMIAH WATSON
DEFENDANT